Your honors, good morning. May it please the court, Timothy Scott on behalf of the appellant Elide Caruto. We are here asking to reverse Ms. Caruto's conviction because the grand jury that indicted her was given erroneous instructions on the law and in fact erroneous instructions on the grand jury's function itself and its historical role in the justice system. Now I wish to put the court at ease, if I might, that I am not here to re-argue Navarro-Vargas. I'm not here to re-argue Marcucci. The attacks, the constitutional attacks on the model jury instructions have been well-documented. They've been well-argued by Mr. Hubachek, among others, and federal defenders, and I can't say it better than what's already been said. I recognize that this court has allowed the model instructions to withstand constitutional attack and has done so en banc, but over vigorous dissent. The reason we're here today is because we're not talking any longer about model instructions. The grand jury instructions that Ms. Caruto was indicted upon went beyond that. They were ad-libbed in some part. They were extemporaneous, and they were instructions that have never been approved by the judicial council, as the ones that were approved in Navarro-Vargas and Marcucci. They were never set forth in model instructions, and they have never been upheld or even considered by this court. Now, if I might, I'd like to focus my arguments. I raised several. I pointed to several different instructions that, in our view, were unconstitutional, but the one I'd like to focus on, with the court's permission, is the one regarding punishment. Now, the law has been for many, many years that grand jurors can, in fact, consider punishment. It is one of the historical roles of the grand jury and something that has been specifically set forth, recognized, and approved in jurisprudence, including the Supreme Court decision Vasquez v. Hillary. Vasquez, of course, was quoted and approved of and cited in the Navarro-Vargas en banc opinion that this court has issued. So there really is not a question that a grand jury can, and it has historically been one of the grand jury's roles, to consider punishment. As the Vasquez court put it, to return an indictment on a greater or a lesser offense, on a capital offense or a non-capital offense, or, of course, to return no bill at all. Historically, the severity of an offense, the severity of the potential punishment, has been something that has been part of the grand jury's role. Now, after the Navarro-Vargas decision. No, that's a little bit different, counsel. In Vasquez, if we're talking about returning a bill, we're not talking about returning a bill on punishment. We're talking about returning a bill on a crime for which there may be, we assume that there's some kind of corresponding punishment. But these instructions go to the question of punishment, not to the question of whether we committed first-degree murder or second-degree murder or a negligent homicide. So it seems to me that the Vasquez doesn't really support your argument very much. Well, it's been read that way. It has been read to support grand jury consideration of punishment. Who read it that way? Well, Cortez Rivera, for one. Now, I recognize that Cortez Rivera went the other way and said that on these instructions, and I'm referring to the model instructions that have been approved by the judicial counsel, they are constitutional because they left room. And in Cortez Rivera's words, albeit limited room to consider punishment. And Cortez Rivera upheld those instructions, saying, we uphold them because it did not pose an absolute bar on the jury's consideration of punishment. So by that reasoning and its reliance on Navarro-Vargas, which in turn cited Vasquez, Cortez Rivera seemed to assume that Vasquez reads to allow the jury to consider punishment. Were it not read that way, Cortez Rivera wouldn't have had to tussle with the idea of whether or not there was room or limited room or no room at all to consider punishment. It would have simply said grand juries historically should not consider punishment. So I would argue to the court that Cortez Rivera does support my reading of Vasquez, as well as Navarro-Vargas' citation to Vasquez. What is it about the punishment in this case that would have given a grand jury pause? This is actually an excellent case regarding punishment. Lide Carruto is a grandmother. She's in her 50s. You see, one of the things that troubles me about this argument is all this stuff comes out in a pre-sentence report after someone is convicted. In the context of a grand jury indictment in a run-of-the-mill case like this, the grand jury wouldn't know that she's a grandmother. They wouldn't know a lot of the facts that would be in a pre-sentence report. They would know about this particular crime, what it is that she did. She didn't testify before the grand jury. What is it about what the grand jury realistically would have known that would have caused them to say, oh, my goodness, how much drug did she bring in? It was some amount of kilos of cocaine. It was a hard drug case. They would say, oh, my God, X number of kilos of cocaine. We think the sentence is we shouldn't indict her. Is that realistic here? Well, there's two responses to that. The first response to that is, of course, it's up to the prosecutor what facts they share with the grand juror. Well, you're not suggesting that the prosecutor now has to share every, you know, essentially do a pre-sentence report before he gets an indictment? No, of course not. And, in fact, unfortunately, the law is clear. They don't even have to offer exculpatory evidence. I would suggest that they would have to offer some nucleus of facts to tell the story, which would include this female person, Alita Carruto, perhaps what she said at the border, and the facts of the case. Now, the second response to that perhaps can put the court at more ease with my argument. The second argument is what the court is really saying is, well, isn't error harmless? I mean, that's sort of the – There's another aspect to this. Look, I've charged grand juries and I've presented cases in my course of my career to grand juries. I actually don't – in the normal case, the grand jury is charged when they're selected, and they sit for a month, they sit for some of them three months, six months. I really doubt three weeks or four weeks into this, into their duties, that they could pass a test on what they were told in the judge's charge, particularly when we're parsing words, you know, between should and must or whatsoever. But, yes, you're right. It is a harmless error, and I don't know why the harmless error analysis shouldn't apply in this context when we have no reason to believe that there's anything in this case that would have caused the grand jury to have any problems. And the other thing to keep in mind, unlike a petted jury, you don't need a unanimous vote. You just need an absolute majority of 12, I think it is. It could be 12 to 11. So you don't even need an absolute – you don't even need unanimity. So you don't need unanimity. You have somebody bringing in a large quantity of drugs, which strikes laymen even more severely than it sometimes strikes judges in terms of how these people should be punished. And now, on appeal, we're supposed to set aside this indictment and conviction and order a new trial? The answer to that is that we don't do a harmless error analysis in a situation like that. And where does that come from other than an unusual case involving racial discrimination in a grand jury that was selected in 1962 and the Supreme Court dealt with in 1989, and you could barely find the majority to justify, you know, any particular holding? When the instructions upset the functioning of the grand jury, its historical function, when it makes it something that it's not, in this case a body that cannot consider punishment, when historically and constitutionally it is a body that can consider punishment, then we don't do a harmless error analysis. Well, I don't understand that. Why not? If there's nothing to suggest that the punishment here would have given a grand jury pause, so we have to say it's structural? I mean, it doesn't make any sense to me. I don't think that we can fairly say that the punishment would not have given the grand jury pause. There's been a fair amount of criticism, of concern, of literature. I mean, and we're not talking legal scholarship. We're talking in newspapers as well about minimum mandatory sentencing, about federal judges, and many trial judges in the court. Trial judges, but, you know, the truth of the matter is, is that one of the reasons that Congress enacted mandatory sentences and why they still survive is because they happen to be popular politically among the people, as opposed to judges who have to mete out sentences which appear to them to be particularly harsh. Was there a mandatory minimum sentence here? Yes. This woman received ten years. But she also might not have received ten years if she had pled guilty, at least in the Eastern District of New York, I guess. No, she would have. She had a DUI. She drove under the influence, so she was not safety valve eligible, so she could get no less than ten years. No, no, but they bargain away mandatory minimum sentences, at least in Brooklyn. I don't know what they do here. Counsel, the whole argument here is long ball, because you are requesting that we send this back, because there's an error in the grand jury instructions, on the hope that the grand jury won't indict her, that there will be a little bit of grand jury nullification here. And as our opinion in Navarro-Vargas tries to make clear, the protections for grand jury nullification come out of the fact that the grand jury sits anonymously and that its judgment is absolutely unreviewable. You've already had a pettit jury that has come in, has seen her and all of her evidence, and has now ruled unanimously against her. Whatever nullification you might have gotten from a grand jury, the pettit jury declined to give her. I mean, this is a difficult argument to make, that because the district judge uttered the word whatsoever, that all of a sudden we have structural error, because of the possibility the grand jury might have nullified the indictment. I see that my time has expired. May I answer that question? Sure. I recognize, and I know that I'm speaking to the author of the Navarro-Vargas decision, and I understand that there was much written about the, that it was the lack of review that really gives the grand jury its power. I would suggest respectfully, understanding who my audience is, that the holding, however, that was signed off on by all of the judges were on three instructions. One was on the wisdom of the criminal laws. One was on that you should indict whenever there is probable cause. And one was on the duty of faith and candor and fair dealing by the U.S. Attorney's Office. Those were the three discrete instructions that were held up as unconstitutional. And what the court ultimately said was, those are not unconstitutional. So I would not agree that the holding was, it doesn't matter how you instruct the grand jury. What's important about the grand jury is that they deliberate in secret and that it's not reviewable. The instructions have to matter. Otherwise, the court would not have gone through and parsed whether they used the word should or shall or some of those things. And it's certainly not the way that the Cortez Rivera decision came down either. Cortez Rivera didn't hold that it doesn't matter what the instructions are because it's the structure of the grand jury that protects its independence and its historical function. And just to respond to the second part of the court's question about punishment, the law is crystal clear that a pettit jury may not consider punishment. So that's a different situation. I'm not arguing that a pettit jury should consider punishment. They cannot. They have to be blind to the minimum mandatory sentence that may be handed down in that case. A grand jury, however, that is one of their functions to decide. I don't feel comfortable letting a minimum mandatory sentence go forward for somebody. How would a grand jury ever know that there was a mandatory minimum? Grand juries are informal proceedings. They are allowed to bring in their outside knowledge. They are allowed to bring in their own. But they wouldn't be instructed on that, would they? No, I'm not suggesting that they have to say. So it's just whatever the grand jury would bring into the room. Correct. But as the conscience of the community, which, again, is its historical function being the buffer. And I want to make sure that I understand. Your argument that grand juries have historically been allowed to consider punishment is based on Cortez Rivera's reading of Vasquez. Is that right? Cortez Rivera assumes it. I think it's implicit, but not even implicit. But I don't think the court did. Did Cortez Rivera say anything about the historical function of grand juries in reviewing punishment? They certainly didn't do the historical analysis Navarro did. But I think that the cases after Vasquez uphold the ability of the grand juries. But it might overstate things just a little bit to say that grand juries have historically been permitted to consider punishment. I don't think it overstates it. I think that. But do you have any evidence of the historical practice? Of the historical practice of considering punishment? I understand what you're saying is that Cortez Rivera may extend Vasquez's structural error to questions dealing with punishment as opposed to the crime committed. But when you argue that grand juries have historically been permitted to do that, do you have any evidence for historical practice? I think that there's a great deal of overlap between punishment and wisdom of the criminal laws to some extent. And the court itself in Navarro-Vargas, I think it described it as a checkered past. Some evidence on one side of exercising that buffer fashion to protect citizens from either the charges or the punishments meted out by the government. And then there was a history that the court also pointed out of instructions going the other way. So I think that there is historical support, not just for questioning the wisdom of the criminal laws, but also for punishment. And, again, I do rely heavily on the Vasquez decision. It is a Supreme Court decision. It does discuss the grand jury can return capital or non-capital and consider greater or lesser offenses. I think that has to mean the grand jury weighing in on what punishment is appropriate. Thank you. We helped take you over time, so we'll still give you a minute for rebuttal. We have the luxury of cases being submitted today gives us some flexibility. May it please the Court, George Hardy for the United States, good morning. The defendant, in this case the appellant, actually was convicted by two different pettit juries on two different occasions beyond a reasonable doubt of finding that she was guilty of importing 75 pounds of cocaine. The Supreme Court in the United States v. Machanek said very clearly, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt as a result of the jury's guilty verdict. But doesn't that really go to the issue of issues like whether there's probable cause to indict or erroneous submission of evidence if that's possible in a grand jury? The jury's decision to convict when the jury is told that they cannot consider punishment is not necessarily determinative of whether the grand jury, it doesn't obviate, I should say, the fact that the grand jury was told otherwise, assuming that was error. I don't know that you can argue that the pettit jury's verdict cures that if it was error. In Machanek, it was not an instruction to the grand jury case. It was a Rule 6 violation. Right. But the language used by the Supreme Court is pretty darn clear. It says what you're questioning by the Rule 6 violation is whether or not the grand jury's function was distorted in some way. Was their independence undermined as a result of two different witnesses sitting there for the government arguing away? Was the constitutional function of the grand jury undermined? That's very similar to an instruction to the grand jury saying don't consider punishment or the wisdom of the laws is for the judge to decide not, those other, those arguments go to the independence of the grand jury's decision-making process. So when the Supreme Court says if a jury, pettit jury, finds the person guilty after the fact beyond a reasonable doubt, then the question of whether or not they were swayed inappropriately to return an indictment against an innocent person, which is the constitutional function, that's the bulwark against doing that, then the jury verdict renders any of those problems with the charging process harmless beyond a reasonable doubt. That's what Machanek says. Do you agree that the charge with respect to punishment was erroneous? Well, Judge Burns has a way of embellishing the standard instructions, and we've had occasion to argue several iterations of these. In this particular, if we're parsing the words, he starts off with the correct Cortez Rivera instruction. He says, furthermore, when deciding whether or not to indict, you should not be concerned with punishment in the event of conviction. Judges alone determine punishment. And then he goes on to describe, well, that makes good sense because they haven't been convicted yet, so we don't know if they're going to be punished. And then at the end of that paragraph, that section, he comes back to his original iteration and adds whatsoever at the end of that sentence. And I suggest we don't really know exactly what he's saying by adding whatsoever. If he's suggesting that whatever the punishment might be should not concern you, then that suggestion doesn't go to the permissiveness of the instruction. It doesn't undermine the independence. But I'll grant you, it's not a correct statement. It's something we would not like to see in the instructions to the grand jury. The question is whether or not it skews the constitutional framework so badly that we can say that this grand jury, all of its indictments, should be thrown out because there was a constitutional infirmity. Well, they wouldn't all be thrown out at this stage of the game. First of all, under another Supreme Court case that's arguably inconsistent with the last class, the Supreme Court said if you don't raise this issue, it's waived. The case called Davis v. The United States. I suspect, though, we would see a flood of 2255s, and there are at least 68 pending cases in the Southern District of California stemming from 2005. So I think the consequences would be sweeping. But this is a Rule 12b. It says it's waived if not raised. And in Davis v. The United States, which is a 2255, the Supreme Court said that it's waived if it's not raised. And I'm going to make that argument. Your Honor. It's inconsistent, of course, with it being a structural defect, but that's a separate story. Correct. I understand. But we are limited to this case right now. We should look at just this case and not be overly concerned about its sweeping effect. But I --. Does the jury have a right to consider, for example, that this was a mandatory 10-year sentence? And, I mean, there are cases where it always appeared to me, at least, where the authority to impose it. Should a grand jury be permitted to consider it? The Department of Justice takes the position that punishment should not be part of the deliberation. Whatever possible sentence the defendant could face as a result of conviction should not be part of their deliberative process. Is that ‑‑ is it prohibited that the grand jury know that? I don't think so. I don't think there's anything out there that says they cannot hear that information. And if queried, if the grand jury asks the question, you know, my pattern over the last 30 years has been to say, let's answer that question after you've considered whether or not there's probable cause, because I don't think the grand jury should be denied that information later on. I don't think there's anything that prevents that. But in terms of ‑‑ Does that mean they should consider it after they find probable cause? After they invite somebody, you'll tell them what the sentence will be? That's exactly right, Your Honor. I mean, they're asking the question. They're impaneled to investigate, to know what's going on in the community. And if they ask me a question, unless there's some real reason why I can point to why I should not answer that question, I'm going to answer that question. But you may answer it after it makes a difference. Well, I'll answer it after it doesn't make a difference. To make sure I understand, are you saying that you're willing to answer the question after they've done what you were hoping they would do and hand up the indictment? I'm telling the ‑‑ I'm suggesting that under our Department of Justice policies, we don't want irrelevant information being considered in their decisionmaking process about whether or not there's probable cause to indict this person. And the maximum possible penalty is not pertinent to whether or not there's probable cause to indict this person for an offense. Well, suppose the question is more pointed. Suppose somebody says, gee, I've read about this, and I understand all these drug criminals. They're subject to these long, mandatory 10, 20‑year terms, so on and so forth. Is that true here? And then what do you say? Well, hypothetically, I would say that's an interesting question, but I don't think we should be answering that question before you consider the facts supporting this particular charge. But then I would try to get back to them later on, because there's a citizen asking questions about what's going on in our community. And if it's appropriate and not prejudicial, then it's a question that I'd like to answer. But getting back to the harmless error issue, I don't see a way around Mechanic. I don't see that it's limited to a Rule 6 violation. Measured by the Petit or the Petit jury's verdict, any error in the grand jury proceeding connected with the charging decision and instructing about punishment, whether or not they should consider it, would be an attempt or an effort to sway the grand jury's decision‑making process in an inappropriate way. Let's take the hard thing, composition of the grand jury. Suppose you have the claim that the grand jury was excluded, that the selection process excluded all blacks. And so you have a subsequent conviction. You have the probable cause determination sustained. Wouldn't you still have a problem error? You'd have a huge problem. Right. So at least on some level. Of course. So where's the line between them? Well, it's not here. And in Vasquez Hillary, it's clearly racial discrimination, which was not, as this Court well knows, that case did not involve an examination of the grand jury clause of the Fifth Amendment. That was a case involving equal protection analysis. So if you get into the context of what kind of instruction would be inappropriate, let's just say that the court instructed you are directed to do exactly what the prosecutor tells you to do in all cases. That's your function. If the district court entertained a motion to dismiss, the district court should dismiss that indictment. And the district court could have dismissed the indictment here, assuming that the reference to whatsoever was that strong. I'm not saying that the district court might not have had that authority. And then so you go back and correct the error. But what the Supreme Court is saying, if you get a conviction thereafter in this kind of analysis, where you're dealing with one word and whether or not it undermines the overall impact of the grand jury instructions. Well, let's take your hypothetical. Suppose the instruction given is the absolute dream of the U.S. attorney saying that you must do what the U.S. attorney tells you to do. And the district court doesn't dismiss it. There's a motion to dismiss the indictment. The district court doesn't. Subsequently, there's a conviction. Are you telling me that the district court gets to end that issue? There has to be a limit to the mechanic language. Yeah. And it would have to go to viewing all of the instructions in their entirety. Is it directing the grand jury to perform a function which the Constitution does not permit it to do or does not want it to do? And in that case, in that hypothetical, it's not performing any constitutional function. It's not independent at all. And, therefore, there would be this. So you're only coming back in the merits of this case, you're coming back to the word should as opposed to shall, the same kind of distinctions we've drawn before and said this wasn't the instruction that potentially crosses the line because the grand jury wasn't told it had no role. That's correct. I'm saying this does not completely undermine the independence of the grand jury. I'm out of time. Thank you very much. Thank you. And both counsel have been very helpful in this case. We'll hear from Mr. Scott. Thank you, Your Honor. I'll do my best in the minute remaining. As to whether grand jurors would care about punishment and whether this is harmless, what we just heard. This case. That was my question. Correct. In other words, what is there about this case? I could see that if she testified, for example, and she gave a pause, I'm a grandmother, whatever, all of these, if I have 10 children or grandchildren that are dependent on me, I'm facing a 10-year mandatory minimum sentence. Have mercy on me. And I might be able to understand your argument, but there's nothing in this case to suggest that the grand jury would have done anything else. There was nothing before it that would lead it not to indict just because of this error. And it seems to me I don't agree that it's structural. I'm down to five seconds now. Let me try to answer. So I gave him a minute for asking the question. That's all. Thank you for the rebuttal, Your Honor. Please respond. Thank you, Your Honor. I appreciate the question and the concern, Your Honor. The point I was making is that grand jurors, by the argument we just heard from the assistant U.S. attorneys, they do care about punishment. We learned this morning that in this own U.S. attorney's experience, it's not unheard of for them to ask. They want to know what the punishment is. They want to know, is this one of those 10-year cases that we hear about? And apparently, and perhaps this is an issue for a different day, they don't get the answers to those questions. But I think that in the government's presentation today, we at least have some creditable circumstantial evidence that grand jurors do want to know about punishment and that this could be a case where they would be. Why is this case that case? I mean, you're trying to tell us not just the structural argument, but this case is one that might qualify. And what is it about this case that might qualify? Well, I'm sensitive to the argument that we don't have a full pre-sentence report in front of us. One thing we also don't have in front of us, regrettably, is the entire voir dire of the jury. Another thing that the government pointed out is that this particular judge is gregarious and is known for extemporaneous. Jazz riffs. Just think of it as a jazz riff. It is. It goes on to its own tune. And perhaps some of that jazz may have played during voir dire is what we're suggesting. And I would have liked to have heard it to see how the court received that particular riff. That was one of the, in all seriousness, that was one of our requests. Because the government just argued to us, we have to look at the entirety. We have to look at everything. And everything has to include the instructions that are given, but also answers to questions in voir dire in the full context. We can redact names if it's a Rule 6 issue. But what we do want is the record. And then I would be in a better position to answer your Honor's question and to answer more questions about this particular case, as I would be able to point to the jazz that occurred in the voir dire process itself. It's a serious policy question. It's one thing, as the Assistant U.S. Attorney said, to let the district judge deal with this before trial. And if he wants to dismiss it and say, go back and get an indictment, nobody's going to get excited about it. But then there's a trial and conviction with all of the procedural protections. And the policy argument is, why should we go back over this again? Your Honor, so what went on before the grand jury when we all know, absent a record of the kind that I've described to you, that the grand jury is going to do the same thing? There has to be some policy reason for dealing with this on appeal after a conviction. Perhaps I have a more optimistic view of the grand jury. I would like to think. Have you ever presented cases before them? No, I have not. They don't let me in that room, it turns out, as defense counsel. But I would like to think that a grand jury properly instructed would take their duty seriously. And if they knew they could consider punishment, they would consider punishment. And they might seek to exercise their historical function to the benefit of a 50-year-old grandmother who drove a car from here to there and got 10 years in exchange for it. Thank you. Thank you. We thank both counsel for the arguments. The case just argued is submitted. That concludes the calendar for this morning. We're adjourned.
judges: Korman, Clifton, Bybee